PETTIGREW, J.
| aThis appeal arises from a Suit on Note filed on August 27, 2012, by Neighbors Federal Credit Union (NFCU), the holder of a Retail Installment Contract and Security Agreement executed by the defendant, Sean Q. Anderson (Mr. Anderson), in favor of Salsbury’s' Dodge City, L.L.C. (Sals-bury’s) on June 3, 2006. The suit sought to collect the unpaid balance of $19,158.47, together with interest at the rate of 7.49 percent, from September 21,. 2007, until paid, in-addition to attorney fees not to exceed 25 percent of the amount due, and costs incurred in collection proceedings. The district court granted summary judgment in favor of NFCU, ordering Mr. Anderson to pay the amount sought — the sum of $19,158.47, together with interest at 7.49 percent per annum from September 21, 2007 until paid, reasonable attorney fees of 25 percent the amount due, as well as costs incurred in the collection proceedings. Mr. Anderson appeals that November 14, 2014 judgment. For all the reasons that follow, we affirm.
MOTION TO DISMISS APPEAL
Following the lodging of this appeal, on July 13, 2015, this court issued an ex proprno motil rule to show cause why the seemingly untimely filed appeal should not be dismissed. On October 19, 2015, a different panel of this court issued an Interim order, remanding the matter to the district court for the limited purpose of allowing Mr. Anderson to present proof of the time *729 liness of his appeal. Following that order, Mr. Anderson supplemented the record (both at the district court and this court) with documentation proving that he “forwarded” the original signed notice of appeal, together with the filing and transmission fee, within seven days, exclusive of legal holidays, from the date of the facsimile transmission of the document, as required by La. R.S. 13:850. Because the appeal had not yet been docketed, on February 16, 2016, a different panel of this court considered the supplements and referred a final ruling on the rule to show cause to the panel to whom the appeal on the merits has been assigned, and it is now before us. We have reviewed the evidence, now properly in the record, and find it amply supports (by a preponderance of the evidence) that Mr, Anderson timely filed the notice of appeal. Therefore, the appeal is maintained.
| «FACTUAL SUMMARY
Mr. Anderson purchased a 2004 Ford F-250 pickup truck on June 3, 2005, from Salsbury’s for $31,900.00 (net of sales tax). On that same date, Mr. Anderson executed a Retail Installment Contract and Security Agreement (covering the truck as collateral securing his indebtedness) in favor of Salsbury’s. By Dealer’s Assignment and Buyer’s Consent to assignment, the note executed by Mr. Anderson in connection with the above was assigned by Salsbury’s to NFCU on that same date. Ultimately, Mr, Anderson defaulted under the note and subsequently, voluntarily surrendered the truck to NFCU for sale (with NFCU reserving its deficiency rights). NFCU sold the truck on February 29, 2008, for $4,000.00, to McCray’s Auto Sales (McCray’s). NFCU filed suit on August 27, 2012; the amount sought reflects the deficiency NFCU alleged was owed by Mr. Anderson after he defaulted on the loan and after the sale of his vehicle was credited to his note.
PROCEDURAL HISTORY
On August 20, 2014, NFCU filed a motion for summary judgment, which was ultimately granted by the district court on November 14, .2014, awarding NFCU the amount it claimed. In support of its motion, NFCU . .submitted the affidavit of Robert Simon,, a recovery specialist at NFCU, attesting to the' existence and validity of all documents supporting NFCU’s claims, which were also submitted as evidence. This evidence includes: the Retail Installment Contract; the security agreement in favor of Salsbury’s and endorsed and assigned to NFCU; proof of Mr. Anderson’s default on the loan; a copy of the Voluntary Surrender, dated January 24, 2008, whereby Mr. Anderson voluntarily surrendered the truck for sale, with NFCU reserving its deficiency rights; a notice of NFCU’s plan to sell the . truck, mailed to, Mr. Anderson by NFCU, dated February 8, 2008; NFCU’s records reflecting that the truck was sold for $4,000.00, the highest bid made, on March 5, 2008; proof that NFCU received insurance premium refunds of $2,912.00 and $1,877.24 and that it applied those refunds to the balance on Mr. Anderson’s loan; records reflecting that $120.00 was transferred by NFCU from Mr. Anderson’s savings account and also applied to the balance due on the loan;, and a copy |4of a letter dated April 3, 2008, mailed by NFCU to Mr. Anderson, explaining the calculation of the deficiency owed on the note.
The record on appeal does not contain a memorandum in opposition to the motion for summary judgment, but the transcript of the hearing alludes to the existence of such a memorandum, and also reflects that Mr. Anderson opposed the motion on the *730 basis of allegedly unexplained discrepancies in the amount allegedly owed by him on the note, as well as challenging the subsequent sale of his vehicle by NFCU to McCray’s, as not being commercially reasonable.
On appeal, Mr. Anderson assigns error to the summary judgment grant on the basis that the district court’s acknowledgment of the conflicting evidence concerning the amount claimed to be owed reflected the presence of a genuine issue of material fact. Moreover, Mr. Anderson contends that the subsequent sale of his vehicle by NFCU to McCray’s was not commercially reasonable, another • basis upon which he contends the district court erred in granting summary judgment.
DISPOSITION OF COLLATERAL AFTER DEFAULT
It is not disputed that the security agreement in this matter was a secured transaction subject to Chapter 9 of the Louisiana Commercial Laws. With regard to secured transactions, Louisiana Commercial Laws govern the disposition of collateral after default in La. R.S. 10:9-610, in part, as follows:
(a) Disposition after default. After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.
(b) Commercially reasonable disposition. Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or parcels, and at any time and place and on any terms. A disclaimer or modification of warranties in a secured party’s disposition of collateral is commercially reasonable.
Although “commercially reasonable” is not defined in the Louisiana Commercial laws, “good faith” is defined in La. R.S. 10:1-201(20) as “honesty in fact and the observance of reasonable commercial standards of fair dealing.” Additionally, La. R.S. |fi10:9-627, entitled “Determination of whether conduct was commercially reasonable,” provides as follows:
(a) Greater amount obtainable under other circumstances; no preclusion of commercial reasonableness. The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.
(b) Dispositions that are commercially reasonable. A disposition of collateral is made in a commercially reasonable manner if the disposition is made:

(1) in the usual manner on any recognized market;

(2) at the price current in any recognized market at the time of the disposition; or

(3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

(c) Approval by court or on behalf of creditors. A collection, enforcement, disposition, or acceptance is commercially reasonable if it has been approved:
(1) in a judicial proceeding;
(2) by a bona fide creditors’ committee;
*731 (3) by a representative of creditors; or
(4) by an assignee for the benefit of creditors.
(d) Approval under Subsection (c) not necessary; absence of approval has no effect. Approval under Subsection (c) need not be obtained, and lack of approval does not mean that the collection, enforcement, disposition, or acceptance is not commercially reasonable.
(Emphasis added.)
Moreover, in the absence of a definition of “commercially reasonable” in the correlative UCC provisions prior to reenactment by Acts 2001, No. 128, § 1, eff. July 1, 2001, the court in Ford Motor Credit Co. v. Melancon, 95-1221 (La.App. 3 Cir. 6/19/1996), 677 So.2d 145, 150, found guidance by Professor William D. Hawkland, a member of the Permanent Editorial Board of the UCC, citing the following (also referring to the correlating UCC provisions in effect at that time):
The term “commercial reasonableness,” by which all aspects of the disposition must be measured, is not defined in the UCC. This omission was the result of design. The draftsman felt that it would be unwise to try to Rplace finite limits on the overriding standard of fair play that was to circumscribe all dispositions by the secured party under Chapter 9. Commercial reasonableness, therefore, is a general standard, something akin to other supereminent provisions such as “reasonable man,” “reasonable time” and “good faith” that are used throughout the Anglo-American legal system and have served it well. Within this broad outline, jurisprudence, positive law found in UCC § 9-507 and official UCC Comments offer some guidance to give more concrete meaning to the concept of commercial reasonableness.
The case law suggests that the obligation of the secured party to act in a commercially reasonable manner generally means that he must use his best efforts to see that the highest possible price is received for the collateral. As suggested by an official. comment, the provision of UCC § 1-203 imposing a general obligation of good faith also is applicable in determining commercial reasonableness.
Although the UCC does not define commercial reasonableness, it does provide several rules that are helpful in determining whether or not this standard has been met. These rulés are found in UCC § 9-507(2).
The first rule in UCC § 9-507(2) provides that the fact that a better price could have been obtained by a sale at a different time or by use of a different method is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. Moreover, if the secured party sells the collateral in the usual manner in any recognized market or otherwise sells it in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold it in a commercially reasonable manner. Finally, if the disposition has been approved in any judicial proceeding or by any bona fide creditor’s committee or representative of creditors, .the disposition is conclusively deemed to be commercially reasonable.
Official Comment 6 to UCC § 9-504 also gives guidance as to the meaning of commercial reasonableness in a situation that occurs with frequency, namely where the timeliness of the disposition is challenged. Initially, [it] should be noted that the UCC does not provide how long the secured party may hold the collateral before'being obliged to dispose *732 of it. By leaving this matter open, the intention of the draftsmen was to limit the secured party in this regard only by the standards of commercial reasonableness. The UCC’s comment speaks to that issue, stating that its silence on the matter of timeliness of disposition is in line with its policy to encourage disposition by private . sale through' regular commercial channels. It suggests, for example, that the secured party might be acting in a commercially reasonable manner if he delayed a disposition where the market for the collateral had collapsed, or if he prudently decides to sell a large inventory of parcels over a period of time rather than all at once in bulk. On the other hand, the comment implies that a secured party would not be acting in a commercially reasonable manner if he held the collateral for a long period of time without disposing of it when no reasons exist for not making a prompt sale, thus running up large storage charges against the debtor. The comment also suggest that the secured party in holding the goods for disposition should be mindful of the general obligation of good faith under UCC § 1-203.
Id., at pp. 150-51, citing, W. Hawkland, Hawkland’s Handbook on Chapter 9 Louisiana Commercial Law (1990), at Chapter 5-Pages 16 & 17. (Emphasis added.)
ASSIGNMENT OF ERROR
The sole assignment of error set forth in this appeal challenges the district court’s granting the summary judgment, while at the same time acknowledging the existence of conflicting evidence regarding the amount claimed to be owed, and in light of the widely varying values of the vehicle, which Mr. Anderson’ alleges reflect that NFCU’s sale of the repossessed vehicle was not “commercially reasonable,” Accordingly, Mr. Anderson submits the summary judgment was improperly granted and urges this court to reverse that judgment.
Inconsistency in the Amount Owed
Mr. Anderson maintains that the unexplained inconsistencies reflected by the evidence submitted, and relied upon by NFCU in claiming the deficiency owed, reveal that NFCU failed to prove the amount owed with sufficient certainty required to support the grant of summary judgment. Mr. Anderson points but that NFCU’s petition asserts the amount owed is $19,158.47 plus 7.49 percent interest per annum. However, the affidavit of Mr. Simon, submitted by NFCU in support of its petition, ánd the attachments thereto, revealed discrepancies in the amount owed.
Specifically, the notice of intent to sell collateral,, dated February 8, -2008 (and referenced in paragraph .9 of Mr. Simon’s affidavit) claims $23,699.71 is owed. Adding to the discrepancies regarding the amount owed, Mr. Anderson refers to the “Explanation of Calculation of Deficiency letter” referenced in paragraph 14 of Mr. Simon’s affidavit, which reflects a beginning balance due of $28,067.71, and ending, following the application of credits due, in a net amount due of $20,067.40. Based on these discrepancies alone, Mr. Anderson submits that NFCU failed to prove the amount due to the requisite certainty required for a summary judgment to be granted.
Mr. Anderson argues further that .based on the information contained in Mr. Simon’s affidavit, there should-have been a document reflecting that collateral was sold for $4,000.00 and insurance refunds were received on March 3 and 4, 2008, totaling | s$4,789.24, both amounts of which, after being credited to the amount of the unpaid balance on the loan, yield an amount owed as of March 4, 2008, of *733 $14,910.47, plus interest from February 8, 2008, totaling. $102.13. Mr. Anderson claims the foregoing varying amounts due create genuine issues of material fact (the certain amount due . and owing) rendering summary judgment improper. .
NFCU counters that the affidavit of Mr. Simon established that a letter of intent to sell the vehicle and a deficiency letter, explaining how the deficiency had been calculated and that the vehicle had been sold for $4,000.00 to McCray’s, were sent to Mr. Anderson. NFCU acknowledged that the amounts of the balance due on each' of the letters were different, and explained that because the letters had been sent on different days, the balance due changed during the interim. During the time that Mr.. Anderson still owned the vehicle, NFCU paid an insurance premium, which increased the total of the balance owed by Mr. Anderson.
Was the Sale by NFCU “Commercially Reasonable”?
Mr. Anderson relies ’ oh the following facts evidenced in the record to support his claim that the sale of the vehicle at issue was not commercially reasonable. Mr. Anderson paid $31,900.00 for the vehicle at issue in June 2005; following Mr. Anderson’s default and voluntary relinquishing of the vehicle, NFCU sold it on the first day offers were accepted, February 29, 2008, for $4,000.00; Mr. Anderson submits the sale reflects an 87 percent drop in the value of the truck in less than three years. Additionally, the vehicle was subsequently sold just two months later, on May 2, 2008, for $18,750.00. Mr. Anderson claims that, at the very least, the sales history of the vehicle alone creates a genuine issue of material fact regarding whether the sale was commercially reasonable.
Mr. Anderson additionally-argues .that NFCU’s notice to him stated that it would offer the truck for sale starting on February 29, 2008, until sold. The notice also informed Mr. Anderson that offers would be accepted at any time during business hours, and that “[i]f the highest offer is deemed to be acceptable,” then the truck would be sold for the amount of that offer. However, he notes that NFCU admits that it accepted the offer -of $4,000.00 for the truck on the first day it accepted offers; thus, according to the ^information in the letter of notice sent to Mr. Anderson, $4,000.00 was the highest offer deemed acceptable by NFCU. Given the original price paid for the truck vis a vis the 87 percent reduced price at which it was sold on the first day of the sale, Mr. Anderson maintains NFCU could and should have waited for a higher bid in order for the sale to have been commercially reasonable.
Before deciding the issues raised by Mr. Anderson by applying and analyzing the foregoing law and arguments vis a vis the facts and'circumstances of this case, we must first do so pursuant to the following burdens of proof and standard of review applicable .to summary judgment.
STANDARD OF REVIEW AND GENERAL PRINCIPLES OF SUMMARY JUDGMENT
: Summary judgment is subject to de novo review' on appeal; using the same standards applicable to the trial court’s determination of the issues. The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive- determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Its purpose is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Hines v. Garrett, 2004-0806, p. 7 (La.6/25/04), 876 So.2d 764, 769 (per curiam). Summary judgment is appropriate if the pleadings, depositions, *734 answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2); Louisiana Hosp. Ass’n v. State, 2013-0679 (La.App. 1 Cir. 12/30/14), 168 So.3d 676, 685, writ denied, 2015-0215 (La.5/1/15), 169 So.3d 372.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be'negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to | ^establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment La. C.C.P. art. 966(C)(2); Janney v. Pearce, 2009-2103 (La.App. 1 Cir. 5/7/10); 40 So.3d 285, 288-89, writ denied, 2010-1356 (La.9/24/10), 45 So.3d 1078.
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated' therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits. La. C.C.P. art. 967.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issm for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. Id. .
If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Id.
In other words, on a motion for summary judgment, it must first' be determined that the supporting documents presented by the moving party are sufficient to resolve all material issues of fact. If they are not sufficient, the summary judgment should be denied. Only if they are sufficient does the burden shift to the opposing party, to present evidence showing that a material fact is still at issue; only at this point may he no longer rest on the allegations contained in his pleadings. Manzella v. Terrebonne Parish Police Jury, 432 So.2d 414, 417 (La.App. 1 Cir.1983).
 Inin certain instances, the failure of an adverse party to file counter-affidavits does not automatically entitle the moving party to summary judgment. See Acme Refrigeration of Baton Rouge, Inc. v. Caljoan, Inc., 346 So.2d 743, 747 (La.App. 1 Cir.1977). However, if the moving party has established both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, it is incumbent upon the adverse party to *735 set forth specific facts showing that there is a genuine issue for trial. Manzella, 432 So.2d at 417.
In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines, 2004-0806 at 1, 876 So.2d at 765. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050 (per curiam).
APPLICATION OF LAW AND ANALYSIS
Initially, we must look to the pleadings, admissions, and affidavits in the record in determining whether they show the existence of a genuine issue of material fact and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(B). (In this matter, there are no depositions or answers to interrogatories to consider.) The pleadings are few: the petition for NFCU’s suit on note; Mr. Anderson’s answer thereto, which consists of a general denial[1]; NFCU’s motion for summary judgment, as well as any affidavits and attachments submitted in connection therewith.
The initial burden of proof is on the mover, in this case, NFCU. Moreover, NFCU is also the party who will bear the burden of proving at trial, its entitlement to relief in its suit on note. As such, NFCU bears the burden of proving there are no genuine issues of material fact and that it is entitled to judgment on the suit on note as a matter of law.
| ^Evidence Presented Re: Inconsistency in the Amount of the Balance Owed
Mr. Anderson challenged NFCU’s evidence because the balance owed is reflected differently in the intent to sell letter and the deficiency letter, asserting this was a failure by NFCU to establish with certainty the amount owed., NFCU established that the different amounts shown in the letters were due to the fact that the balance owed was changing during those dates, and the subsequent letter with a different amqunt reflected those changes, i.e., an increase in the balance owed for insurance acquired by NFCU;- the credit of the amount of the sale, as well as credits from refunds of insurance premiums and funds from Mr. Anderson’s savings account. The documentary evidence as well as the inherent nature of retail contracts certainly' supports that the difference in the balance owed was inevitable and had no effect on the validity of NFCU’s proof of a deficiency owed by Mr. Anderson.
Mr. Anderson, on the other hand, has not presented any evidence whatsoever to rebut NFCU’s evidence or to otherwise support his challenge based on the fact that different balances appeared at different times during this matter. No evidence was presented that the ending balance in the deficiency letter and the amount plead in the suit were incorrect, or that the facts upon which NFCU relied in calculating the amount due were incorrect.
Our review of the record and the evidence presented reveals that NFCU presented sufficient competent evidence to support its claim that the balance due on the note at each of the relevant times *736 challenged was the correct amount due at that particular time, due to the inherent nature of retail contract installments as well as the credits applied, including the amount sought by the time suit was filed. In the absence of any countervailing, competent evidence by Mr. Anderson, summary judgment is proper on this basis, and we find no merit to. Mr. Anderson’s arguments.
Evidence Presented Re: “Commercially Reasonable” Sale of Collateral?
Mr. Anderson challenged NFCU’s claim for deficiency judgment, claiming that the sale of the truck was not “commercially reasonable.” To this end, NFC.U’s petition (suit on note), to which Mr. Anderson filed a general denial, sets forth that it is the holder of a | ^Retail Installment Contract and Security Agreement executed by Mr. Anderson in favor of Salsbury’s, and endorsed and assigned to it. This document is attached to the, suit, and reflects the parties’ agreement that interest on the unpaid balance would accrue at a rate of 7.49 percent, and that reasonable attorney fees in an amount not to exceed 25 percent of the amount due and owing could be awarded, as' well as collection costs. The Security Agreement reveals the pledge as collateral of the 2004 Ford F-250 pickup truck that was the underlying object of the loan. The original assignment of the note to NFCU was also attached'to the petition. The petition further alleged that Mr. Anderson'defaulted on his obligation on the note to make payments as scheduled, and attached to the motion for summary judgment is the voluntary surrender of the vehicle by Mr. Anderson containing a reservation of deficiency rights by NFCU.
Also attached to the petition is the affidavit of Robert Simon, a “Recovery Specialist” for NFCU, attesting that all the allegations of the petition are true and correct and verifying the genuineness of all attached documents, In addition to the original petition and the accompanying attachments, NFCU, in conjunction with its motion for summary judgment, also submitted a second affidavit by Robert Simon wherein he, again, verifies the correctness of all facts alleged, and of the supporting documents attached to the original petition and the additional ones submitted in support of the motion. Attached to the motion for summary judgment, and verified in Mr. Simon’s affidavit, was the notice dated February 8, 2008, mailed by NFCU to Mr. Anderson, of its plan to sell the truck, as well as the salé documents revealing that thé truck was sold, for the highest bid received and accepted, in the amount of $4,000.00 to McCray’s. Also attached in support of the summary judgment are NFCU’s records reflecting that the principal balance owed on the note was credited with insurance premium refunds received in the amount of $2,912.00 and $1,877.24, including copies of those refund checks, as well as records reflecting that. NFCU also transferred $120.00 from the savings account of Mr. Anderson and applied that amount as a credit to the unpaid principal amount. NFCU also submitted a copy of the deficiency lettér dated April 3, 2008, it mailed to Mr. Anderson reflecting a principal balance owed on the note of $20,067.40 (reflecting the adjusted amount owed after misapplying the aforementioned refunds, as well as crediting the amount received upon the sale of the vehicle), as well as interest owed on the principal amount due and owing at the rate of 7.49 percent per an-num, from September 21, 2007 until paid.
The foregoing evidence is sufficient to establish no genuine issues of material fact and the prima fade elements entitling NFCU to judgment in its favor on the suit on note as a matter of law. Thus, the burden shifted, and it became incumbent *737 on Mr. Anderson to present sufficient competent evidence to the contrary.
As noted earlier, the record before us does not contain a memorandum filed by Mr. Anderson in opposition to the motion for summary judgment; however, the transcript of the hearing on the motion reveals that Mr. Anderson did file an opposition memorandum, but submitted no countervailing affidavits or other competent evidence in support thereof. Our review of the record and the transcript reveals that Mr. Anderson’s challenge to -the sale of the collateral is based on mere allegations with no supporting evidence. Although Mr. Anderson claims the truck was sold for far less than its value, he did not file an affidavit regarding his personal knowledge of the condition of the vehicle, the mileage on the vehicle, or any other attribute of which he had" personal knowledge, sufficient to rebut NFCU’s sale of the vehicle' at $4,000.00 as commercially unreasonable. Indeed, Mr. Anderson presented no evidence whatsoever regarding the condition and resale value of the vehicle at the time it was voluntarily relinquished by him.
Mr. Anderson did submit wholly unsubstantiated documents from the Department of Motor Vehicles (no affidavits) reflecting a single subsequent sale of the vehicle for a value greater than it was sold by NFCU. In addition to being unsubstantiated and incompetent evidence for the purpose of summary judgment, wealsp note that his attempt to show that a subsequent sale at a higher price somehow proves that the earlier sales price was not commercially reasonable falls woefully short of being persuasive competent evidence because it represents- only a single transaction with no evidence to reveal the complete history of the vehicle in the interim period, which would be necessary to rebut NFCU’s showing that the sale of the vehicle to McCray’s for $4,000.00 was 1 ^reasonable. .We likewise find no merit in Mr. Anderson’s challenge-to the summary judgment on this basis.
CONCLUSION
Having found that the evidence in the record reveals there are no genuine issues of material fact in dispute, and that NFCU is entitled to judgment on its suit on note as a matter of láw, we affirm the summary 'judgment dated November 14, 2014, in favor of Neighbors Federal Credit Union and against Sean Q.- Anderson. All costs of this appeal are-assessed to Sean Q. Anderson. ;
AFFIRMED.
HIGGINBOTHAM, J., dissents with reasons.

. Mr. Anderson admitted only his lawful age and domicile; he denied every other allegation in the petition "for lack of sufficient information to justify a belief therein.”