**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2018 CA 1528 and 2018 CW 1120

BOYKIN BROTHERS, LLC

VERSUS

LABORDE CONSTRUCTION INDUSTRIES, LLC, JOHN LABORDE,
CATAMOUNT CONSTRUCTORS, INC., LMK BATON ROUGE
CONSTRUCTION, LLC, AND THE STANDARD OF BATON ROUGE, LLC

CONSOLIDATED WITH

2018 CA 1529

CATAMOUNT CONSTRUCTORS, INC.

VERSUS

LMK BATON ROUGE CONSTRUCTION, LLC AND
THE STANDARD AT BATON ROUGE, LLC

Judgment rendered __**JAN 2 1 2020**__

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C637569 c/w 639816, Sec. D

The Honorable Janice Clark, Judge Presiding

* * * * *

Russel W. Wray                          Attorneys for Plaintiff/Appellee
Jacob A. Altmyer                        Boykin Brothers, LLC
St. Francisville, Louisiana

Jacob B. Huddleston                     Attorneys for Defendant/Appellee
Scott Edward Frazier                    Catamount Constructors, Inc.
Baton Rouge, Louisiana

James A. Hatch                          Attorneys for Intervenor/Appellee

Paul E. Mayeaux
Metairie, Louisiana

Jeanne C. Comeaux
Druit G. Gremillion
John T. Andrishok
Jordan L. Faircloth
Baton Rouge, Louisiana

Kelsey K. Funes
Amanda W. Messa
H. Alston Johnson, III
Baton Rouge, Louisiana

Kelsey K. Funes
Amanda W. Messa
H. Alston Johnson, III
Baton Rouge, Louisiana
and
Patrick Schwedler
Athens, Georgia

Osman Construction, LLC


Attorneys for Defendant/Appellee
Laborde Constructions Industries,
LLC, and John Laborde


Attorneys for Defendant/Appellant #1
Hanover Insurance Company


Attorneys for Defendant/Appellant #2
LMK Baton Rouge Construction,
LLC

\* \* \* \* \*


**BEFORE: McDONALD, CRAIN,[1] AND HOLDRIDGE, JJ.**

---

[1] Justice Will Crain is serving as judge *ad hoc* by special appointment of the Louisiana Supreme Court.

**HOLDRIDGE, J.**

LMK Baton Rouge Construction, LLC (LMK) and The Hanover Insurance Company (Hanover) appeal a partial summary judgment entered in favor of Boykin Brothers, LLC (Boykin) in this action to enforce a lien perfected pursuant to the Louisiana Private Works Act (PWA). LMK also seeks supervisory review of the trial court's denial of its motion for summary judgment. We reverse the trial court's ruling granting the partial summary judgment. We affirm the denial of LMK and Hanover's motion for summary judgment and deny LMK's writ application as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2014, an apartment complex known as the Standard at Baton Rouge was constructed pursuant to the PWA (herein referred to as "the Project"). LMK served as a contractor and later as the general contractor on the Project. LMK entered into a subcontract with Catamount Constructors, Inc. (Catamount) to perform foundation work for the Project. Laborde Construction Industries, LLC (Laborde) entered into a subcontract with Catamount to furnish all labor, materials, tools, and equipment necessary to furnish and install a complete "Driven Piles [P]ackage" for the Project. Laborde solicited a quote from Boykin to fabricate and deliver concrete pilings, to be furnished by Boykin and incorporated by Laborde on the Project. On or about March 14, 2014, Boykin issued a "Written Proposal" to Laborde, which set forth the price for the fabrication of 858 pieces of 14" pilings, each measuring 65 linear feet, and 281 pieces of 18" pilings, each measuring 95 linear feet. The proposal sets forth separate delivery charges, with the 14" pilings charged a delivery fee of $2.05 per linear foot and the 18" pilings charged at $7.37 per linear foot. The Written Proposal was not signed by Boykin or Laborde.

3

On March 3, 2014, LMK and the owner of the project executed a Standard Form Agreement, pursuant to which, LMK became the general contractor on the project. On July 21, 2014, Laborde's subcontract with Catamount was assigned to LMK.

Boykin was paid $1,549,230.11 for its work on the Project. Payments to Boykin for its work on the Project were made by checks issued by Catamount to both Laborde and Boykin, which were endorsed by Laborde to Boykin. Boykin claimed that it had not been paid in full for the materials it furnished on the Project and that $589,548.99 remained unpaid for the amounts Boykin invoiced to Laborde. On January 28, 2015, Boykin filed a "Lien Affidavit Statement of Claim and Privilege" with the East Baton Rouge Parish Recorder of Mortgages. Therein, Boykin asserted a privilege pursuant to the PWA for the amount of $589,548.99, together with interest at the legal rate, a recording fee of approximately $25.00, and all other sums allowed by law for the materials. On February 20, 2015, LMK, as principal, and Hanover, LMK's surety on the Project, filed a "Release of Lien Bond" with the East Baton Rouge Parish Clerk of Court in order to secure the cancellation of Boykin's lien in the amount of $736,936.24, representing 125% of the amount of the lien. The "Release of Lien Bond" was accepted by the Recorder of Mortgages, and Boykin's lien was cancelled.[2]

On March 4, 2015, Boykin filed this lawsuit against Laborde and its agent, John Laborde, Catamount, and LMK,[3] asserting various claims for nonpayment of sums allegedly due to Boykin for the fabrication and delivery of concrete piles furnished on the Project. As to LMK, Boykin asserted a claim under the PWA,

---

[2] On September 25, 2015, the owner of the Project filed a notice of termination or substantial completion of the Project.

[3] Boykin also sued the owner of the Project, but later dismissed it from the litigation.

4

seeking the enforcement of its lien, along with other relief. Specifically, Boykin sought to recover $589,548.99 from LMK for the materials supplied, delivered, and incorporated into the Project which Laborde failed to pay Boykin, as well as $115.00 to record its lien. Boykin asserted breach of contract and PWA claims against Laborde.

In an amended and supplemental petition, Boykin added Hanover as a defendant in the litigation and also asserted breach of contract claims against LMK and Catamount. Generally, as to LMK, Boykin claimed that: (1) LMK promised to continue to pay Boykin until Boykin had been paid in full for its work on the Project and breached that agreement; (2) LMK assumed a contractual obligation in its contract with Catamount to make all payments on the Project by joint check to Boykin and Laborde and breached that agreement by issuing a check in August of 2014 solely to Laborde; (3) alternatively, prevailing custom implied an obligation on LMK's part to issue joint checks, or at the very least, imposed an obligation on LMK to give Boykin notice of the issuance of any check to Laborde alone, and LMK's failure to do so constituted a breach of the obligation of good faith and fair dealing.

On May 4, 2017, Boykin filed a motion for partial summary judgment against LMK and Hanover (sometimes collectively referred to as "LMK") in which it asked the trial court to determine those defendants' liability under the PWA. Boykin claimed that it was beyond genuine dispute that the principal sum of $589,548.99 remained unpaid to Boykin for amounts invoiced to Laborde for Boykin's work on the Project. It further asserted that of that principal sum, it is beyond genuine dispute that $587,317.12 (including delivery/freight charges) represents the adjusted principal amount remaining unpaid to Boykin and associated with the materials/concrete piles that were delivered to the Project job

5

site (and presumably incorporated or consumed thereon), and thus subject to protection under the PWA. Boykin maintained that the prices and expenses agreed to by Boykin and Laborde are not genuinely disputed. Boykin asked for summary judgment decreeing that LMK and Hanover are liable *in solido* for the sum of $587,317.12, together with interest legally due, and the fees associated with the filing of its lien under the PWA.

Boykin and LMK submitted considerable evidence in support of and in opposition to Boykin's motion for partial summary judgment. LMK urged that Boykin is not entitled to summary judgment on its claims because Boykin's own evidence on the motion showed that there are factual disputes as to the price of and the number of piles delivered to the Project. Furthermore, LMK asserted, Boykin's evidence of delivery of the piles to the job site, consisting of invoices and accounting documents produced by Boykin and not signed or certified by any party, is not competent to sustain Boykin's burden of proof on the summary judgment. LMK also asserted that the arguments raised and the evidence offered in opposition to Boykin's motion defeated Boykin's motion for summary judgment.

On October 27, 2017, LMK filed a motion for summary judgment against Boykin. Therein, it submitted that in November of 2014, LMK made a final payment on the job to Boykin and Laborde, and as a condition of that final payment, LMK required Boykin and Laborde to execute a final waiver and release (Final Release) of any claims they might have had regarding the Project. LMK maintained that Laborde failed to timely remit payment to Boykin for all of the materials Boykin supplied to the Project. LMK claimed it had already paid for the piles in question, and in this lawsuit, Boykin is attempting to force it to pay for some of those piles a second time. LMK's motion is predicated on the Final

Release, signed by Boykin's office manager, Linda Ball, on December 5, 2014. LMK also called into question Boykin's ability to prove its contract claims.

On October 12, 2017, a hearing was held on the cross motions for summary judgment. During the hearing, Boykin addressed its objections to evidence offered by LMK in support of its motion for summary judgment; the court declined to rule on the objections at that time. LMK's motion for summary judgment was heard by the trial court on March 1, 2018. Both motions were taken under advisement. On March 5, 2018, the court held a settlement conference, and on June 12, 2018, the court issued a ruling by minute entry on the cross motions for summary judgment, granting Boykin's motion and denying LMK's motion. The court noted that voluminous memoranda, depositions, and affidavits had been extensively reviewed, and that based on the exhibits and affidavits submitted by Boykin, no genuine issue of material fact existed "as it relate[d] to the defendant herein having accepted the price and terms of the written proposal and that the parties and terms fall under the [PWA]." The court further concluded that the invoiced amounts *ex contractu* could be distinguished from the invoiced amounts under the PWA, and therefore, LMK and Hanover were solidarily liable to Boykin on Boykin's PWA claim. In denying LMK's motion, the trial court found LMK failed to meet its evidentiary burden on the motion, citing the lack of authentic evidence of a compromise or release agreement executed by Boykin's office manager and LMK.

On June 29, 2018, the trial court signed a judgment memorializing those rulings. The written judgment granted Boykin's motion for summary judgment as prayed for and denied LMK's and Hanover's motion for summary judgment. The judgment granted all of Boykin's claims against Hanover, and decreed that LMK and Hanover were liable *in solido* to Boykin in the amount of $587,317.12,

7

together with all interest due and the fees associated with the filing of Boykin's lien.

On July 17, 2018, LMK and Hanover filed a motion to designate the June 29, 2018 money judgment as a final and appealable judgment under La. C.C.P. art. 1915B. The next day, the trial court issued an order designating the June 29, 2018 judgment as final. Two days later, Hanover filed a motion and order for a suspensive appeal seeking review of the judgment rendered in favor of Boykin. Therein, Hanover asserted that the June 29, 2018 judgment is final and appealable pursuant to La. C.C.P. art. 1915A as to Hanover because it granted all of Boykin's claims against Hanover. The trial court granted Hanover a suspensive appeal on August 13, 2018, and on August 17, 2018, Hanover posted a bond in the amount of $675,466.98.

LMK sought supervisory writs from this court, seeking review of the trial court's grant of the partial summary judgment in favor of Boykin and the denial of its motion for summary judgment. The writ application was referred to this panel. **Boykin Brothers, L.L.C. v. Laborde Construction Industries, L.L.C.**, 2018 CW 1120 (La. App. 1st Cir. 10/29/18)(unpublished writ action).

LMK, Hanover, and Boykin filed a joint stipulation in connection with LMK and Hanover's motion to designate the judgment as final for the purposes of an immediate appeal under La. C.C.P. art. 1915B. In an order signed on September 6, 2018, the trial court designated the June 29, 2018 judgment as a final judgment for the purposes of an immediate appeal pursuant to La. C.C.P. art. 1915B. Thereafter, LMK filed an application for a suspensive appeal in which it sought to appeal the judgment pursuant to La. C.C.P. art. 1915B as well as all prior interlocutory rulings or other interlocutory judgments which were adverse to its

8

interests. The trial court granted LMK a suspensive appeal of the June 29, 2018 judgment and other interlocutory rulings or judgments adverse to LMK.

## APPELLATE JURISDICTION

Appellate courts have a duty to examine subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue. **Fils v. Allstate Insurance Company**, 2015-0357 (La. App. 1st Cir. 12/23/15), 186 So.3d 152, 155. A partial summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the grant of the summary judgment does not dispose of the entire case as to that party or parties. La. C.C.P. art. 966E. A partial summary judgment rendered pursuant to La. C.C.P. art. 966E may be immediately appealed during ongoing litigation only if it has been properly designed as a final judgment by the trial court. La. C.C.P. art. 1915B; **Fils**, 186 So.3d at 155. However, a trial court's certification of a partial judgment as final does not make the judgment immediately appealable, as that designation is not determinative of this court's jurisdiction. **Id.**

*LMK's APPEAL*

A joint stipulation was filed by LMK, Hanover, and Boykin in connection with LMK and Hanover's motion to designate the judgment as final for the purposes of an immediate appeal under La. C.C.P. art. 1915B. The parties stipulated that:

1. The June 29, 2018 judgment granting Boykin's motion for partial summary judgment against LMK and Hanover and denying LMK and Hanover's motion for summary judgment holds LMK and Hanover liable *in solido* to Boykin in the amount of $587,317.12, together with all interest legally due and the fees associated with the filing of Boykin's lien;
2. The June 29, 2018 judgment resolves all of Boykin's claims against Hanover and the majority (but not all) of Boykin's claims, demands, issues, or theories against LMK;

3. Hanover is a surety for LMK, the principal obligor, for the entire amount awarded to Boykin in the judgment;
4. Hanover filed a motion for a suspensive appeal which was granted by the trial court and posted a suspensive appeal bond with the clerk of court in the amount set forth in the trial court's order;
5. Because of their solidary liability and the suretyship relationship between them, LMK and Hanover share the same defenses to the claims set forth in Boykin's motion for partial summary judgment making it judicially efficient for the court of appeal to consider the ruling against LMK in conjunction with its consideration of the ruling against Hanover in connection with Hanover's appeal;
6. Because LMK and Hanover are solidarily liable for the amount awarded by the judgment to Boykin on its PWA claim, no further proceedings against LMK, in connection with that claim, are needed at the trial court level until the appellate court considers the suspensive appeal taken by Hanover;
7. There are no issues pending at the trial court level which will alleviate the need for appellate review of the judgment;
8. If the judgment's effects against Hanover and LMK are considered simultaneously, the appellate court will not be obligated to consider these issues a second time once a final judgment is entered against LMK; and
9. There is no just reason to delay appellate consideration of the judgment as it relates to LMK.

In certifying the judgment as a final one as to LMK pursuant to La. C.C.P. art. 1915B, the trial court adopted the statements of fact, recited in the joint stipulations, as its reasons for the designation. The court noted that the judgment awarding $587,317.12, to Boykin against LMK is a partial judgment as to one or more but less than all of Boykin's claims, demands, or theories against LMK and thus falls within the purview of La. C.C.P. art. 1915B. The trial court further found that there was no just reason to delay the review of the grant of summary judgment against LMK and the denial of LMK's cross-motion for summary judgment.

When, as here, an order designating a judgment as final for appeal purposes is accompanied by explicit reasons, this court must determine whether the trial court abused its discretion in certifying the judgment. **R. J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122. We find no abuse of

10

the trial court's designation of the judgment granting Boykin's motion for partial summary judgment against LMK as an immediately appealable final judgment. That judgment had the effect of disposing of Boykin's PWA claims in their entirety. Boykin's only remaining claims against LMK are based on contract theories and are separate and distinct from Boykin's PWA claims. Therefore, this court has appellate jurisdiction to review the trial court's grant of Boykin's motion for partial summary judgment on its PWA claims.

## DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Jones v. Anderson,** 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So.3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966A(3).

The burden of proof rests with the mover. La. C.C.P. art. 966D(1). On a motion for summary judgment, it must first be determined that the supporting documents presented by the moving party are sufficient to resolve all material issues of fact. **Neighbors Federal Credit Union v. Anderson,** 2015-1020 (La. App. 1st Cir. 6/3/16), 196 So.3d 727, 734. In ruling on a motion for summary judgment, the trial court's role is not to evaluate the evidence or determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. **Id.** at 735.

Appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Jones,** 224 So.3d at 417. This court must ask the same questions a

11

trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. The applicable substantive law determines materiality; thus, whether a particular dispute is material can only be seen in light of the substantive law applicable to the case. **Id**. A genuine issue is one as to which reasonable persons could disagree. If reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C.**, 2017-1088 (La. App. 1st Cir. 3/15/18), 244 So.3d 441, 445, writ denied, 2018-0583 (La. 6/1/18), 243 So.3d 1062.

*The Louisiana Private Works Act*

The PWA was enacted to provide protections for contractors, laborers, materialmen, and subcontractors engaged in construction and repair projects. **Burdette v. Drushell**, 2001-2494 (La. App. 1st Cir. 12/20/02), 837 So.2d 54, 68, writ denied, 2003-0682 (La. 5/16/03), 843 So.2d 1132. To that end, La. R.S. 9:4802 provides as follows:

> A. The following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract:
>
> \*\*\*\*\*
>
> (3) Sellers, for the price of movables sold to the contractor or a subcontractor that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.

The PWA, which is in derogation of general contract law, must be strictly construed. Because Louisiana's lien statutes are *stricti juris*, the plaintiff in a lien enforcement action must prove its claim by a "substantial preponderance" of the evidence. **R.L. Drywall, Inc. v. B&C Electric, Inc.**, 2013-1592 (La. App. 1st Cir.

12

5/2/14)(unpublished) 2014 WL 3559390 *2; **Parish Concrete, Inc. v. Fritz Culver, Inc.**, 399 So.2d 694, 696 (La. App. 1st Cir. 1981).

In this case, the parties do not dispute that Boykin took the appropriate procedural steps to perfect its lien pursuant to the PWA. The primary issue in this appeal is whether Boykin proved, as a matter of law, that it is entitled to recover the sum of $587,317.12, together with interest and fees associated with filing of its lien.

In support of its motion, Boykin claimed it was undisputed that a "Written Proposal" provided by Boykin to Laborde, which set forth the price for the fabrication and delivery of the concrete piles to the Project, along with other terms and conditions, was accepted by Laborde. According to Boykin, it fabricated, delivered, and invoiced all concrete pilings as agreed to by Laborde in accordance with its ordinary course of business and under the terms of the Written Proposal, which serves as the basis for its PWA claim. In support of its motion, Boykin filed the following documents: (1) LMK, Catamount, and Laborde's discovery responses; (2) the deposition testimony of Christopher Yancy, Catamount's corporate representative, who testified regarding Catamount and LMK's relationship and who identified the LMK and Catamount subcontract; (3) the affidavits of: Michael David Boykin, Boykin's Chief Operating Officer; Dustin Gaspard, a Boykin sales representative; Linda Ball, Boykin's office manager responsible for generating invoices; Amy Kellogg, Boykin's office employee responsible for generating production logs; Christopher Boykin, Boykin's Chief Technology Officer; and Laurie Pinson, a paralegal at the law firm engaged by Boykin; (4) an excerpt of the deposition testimony of David Boykin; and (5) documents generated by Boykin in connection with the Project.

Michael David Boykin, Christopher Boykin, and Mr. Gaspard made various attestations regarding the agreement between Boykin and Laborde as to the price of the concrete pilings and other terms of the parties' agreement. Michael David Boykin and Mr. Gaspard stated that they issued a verbal quote on behalf of Boykin to Laborde for the fabrication and delivery of 14" and 18" concrete pilings for use on the Project. They also made the following attestations: On or before March 13, 2014, Boykin was notified by Mr. Laborde that Laborde accepted Boykin's verbal quote. The verbal quote given to Laborde did not include mandatory police escorts for the delivery of the 18" piles. However, the Written Proposal, provided to Laborde on March 14, 2014 by Boykin, did include a price for the delivery of the 18" piles that included the mandatory police escorts. Mr. Boykin attested that shortly after the Written Proposal was transmitted to Laborde, he and Mr. Laborde had a discussion regarding the delivery price of the 18" piles, during which Mr. Boykin explained to Mr. Laborde that the delivery price included the price for police escorts, differing from the verbal quote, and that would be the rate Laborde would be charged for those piles if Laborde wanted to proceed. Both Mr. Boykin and Mr. Gaspard attested that Mr. Laborde accepted the price set forth in the Written Proposal for the freight, Laborde did not subsequently complain about the price, and Laborde did not express any further objection to them regarding the terms of the Written Proposal, including the provision for demurrage charges and interest.

A copy of the Written Proposal was attached to the affidavits of Mr. Boykin and Mr. Gaspard. This document sets forth a freight charge of $7.37 per linear foot for the delivery of the 18" concrete pilings. It further states that any demurrage incurred by the fault of others will be charged to the general contractor at a rate of $170.00 per hour. Finally, the document states that '[t]his proposal

14

when signed by the Seller and Buyer constitutes a binding contract[.]" The Written Proposal was not signed by Boykin or Laborde.

In its response to requests for admissions, Laborde flatly denied having entered into a purchase order with Boykin pursuant to which Laborde would purchase piles according to the fabrication charges and delivery charges set forth therein. Laborde stated that the written document provided to it by Boykin was not signed because it did not reflect the terms agreed upon by Mr. Laborde and Mr. Gaspard and/or Mr. Boykin. Specifically, Laborde claimed that the price for delivery of each 18" pile was $2 per linear foot more than the parties had agreed. Laborde also denied that the principal amount of $589,548.00 remained due to Boykin for concrete piles supplied to Laborde for use in the Project, noting that this balance represented charges that were not agreed upon by the parties, and further that it contained amounts that could be offset by Laborde's claims against Boykin for failing to deliver the concrete pilings to the site where they were to be installed. Laborde also denied that it had been paid in full by the general contractor for the concrete piles supplied by Boykin.

Laborde claimed that in August of 2014, Boykin stopped delivering each pile to the location where it was to be driven, as it had previously done in accordance with the parties' agreement throughout the entire Project, and began delivering piles to the entrance of the Project site. Laborde asserted that Boykin's actions required Laborde to physically move each pile from the entrance of the Project site to the location where each pile was to be installed at its own expense, causing Laborde to incur at least $341,331.85 in additional expenses. Laborde claimed that it submitted extra work orders to LMK for payment, resulting from LMK's failure to maintain the Project site, which resulted in Boykin's failure to deliver the piles to the installation site. According to Laborde, despite assurances

15

from LMK that such additional charges would be paid, no additional payments were made to Laborde, and a balance exceeding $590,000.00 remains to be paid by LMK to Laborde. Laborde insisted that Boykin's failure to deliver the piles to the proper location constituted a breach of its oral agreement with Laborde, entitling Laborde to offset these costs against the balance Boykin claims it is owed on the Project.

The Boykin affiants made numerous statements regarding how Boykin invoiced Laborde for the concrete pilings furnished for the project. According to the affiants, Boykin created and regularly updated a production log which served as a contemporaneous data compilation of the pilings fabricated and delivered for the Project, and that from this production logs, invoices were generated for the fabricated piles and for freight upon delivery. The affiants made statements regarding the amounts invoiced to Laborde, the invoices that were paid by Laborde, those that were not paid by Laborde and the amounts owed on those invoices, including charges for demurrage or cancelled loads, and other charges identified by the affiants. According to Ms. Ball, the total amount of $589,538.99 invoiced to Laborde remained unpaid and of that amount, $587,317.12 (including freight and delivery) represented the principal unpaid amount associated with the materials/piles delivered to the Project job site, and of that amount, $276,323.62 represented the amount unpaid for piles, without freight, but including additional incorporated bars in the pilings, that had been delivered to the Project.

In his deposition, David Boykin generally discussed Boykin's charges and explained the nature of demurrage charges. In her affidavit, Ms. Pinson identified documents she retrieved from the Clerk of Court's Office that had been filed in connection with the Project and Boykin's lien. Boykin's voluminous documentary

16

evidence included its production log for the Project and numerous invoices generated therefrom.

In opposition to Boykin's motion, LMK argued that Boykin is not entitled to summary judgment on its claims because Boykin's own evidence shows the existence of factual disputes as to the price and the quantity of the piles it delivered for the Project. LMK traversed Boykin's statement of undisputed material facts, specifically contesting Boykin's claim that Mr. Laborde accepted the terms of the Written Proposal provided by Boykin to Laborde. It pointed to Laborde's discovery responses indicating that Laborde did not pay the full amount of the purchase order because Boykin charged more than the agreed-upon price for the pilings. LMK also focused on Laborde's discovery responses indicating that the Written Proposal did not reflect Boykin and Laborde's agreement as to the price for the piles, as that written agreement set forth a price for the delivery of the 18" piles that was more than had been verbally agreed to by Laborde.

LMK also insisted that any claims Boykin had for demurrage charges, or ancillary service charges, reflected in Boykin's unpaid invoices, and based on Boykin's purported written contract with Laborde, are not recoverable by a supplier against a contractor under the PWA. LMK asserted that under the PWA, Boykin's sole claim against LMK is for the price paid for the movables it delivered and the cost of delivering those movables, but only to the extent that the movables became component parts of the immovable property that is the object of the work. According to LMK, Boykin's motion for summary judgment on its PWA claims was presented in the same manner as a suit for payment under the purported Boykin-Laborde contract, with Boykin seeking payments for invoices issues to LMK pursuant to the terms of that contract regardless of the PWA's requirements. LMK urged that Boykin's unpaid invoices do not reflect the relevant value of

Boykin's PWA claim against LMK, as those invoices do not isolate the amounts recoverable under the PWA which are included in Boykin's remaining unpaid invoices. LMK further pointed out that the invoices for which Boykin is seeking payment clearly include charges for piles that were not delivered to the job site, were never incorporated into the immovable, and are not recoverable from LMK under the PWA.

In opposition to the motion, the bulk of LMK's evidence pertained to the issue of whether Boykin waived its claims against LMK. LMK's opposition evidence also includes the deposition testimony of Ms. Ball, who acknowledged that Boykin invoiced Laborde for freight charges when loads had been cancelled, then charged freight again when the load was delivered to the job site. She also was questioned regarding an invoice charging Laborde for freight costs for the delivery of a broken pile back to the plant; Ms. Ball speculated it was broken at the job site because Boykin would not have charged Laborde for the return freight if Boykin was at fault for the broken pile.

In its motion for summary judgment, LMK asserted that Boykin's PWA claim is contrary to the clear and unambiguous terms of the Final Release signed by Boykin's office manager. LMK's motion sought a judgment enforcing the terms of the Final Release and decreeing that Boykin waived and released all of the claims asserted against LMK in this matter. In support thereof, LMK filed evidence of various individuals' understanding of that document along with some of the evidence it had offered in opposition to Boykin's motion for summary judgment. LMK also argued that Boykin could not meet its burden of proof on any of Boykin's contract claims.

To support its motion, Boykin took issue with LMK's claim that Boykin failed to distinguish its contract claim against Laborde and its PWA claim against

18

LMK. Boykin insisted that it has, specifically and in great detail, distinguished its claim under the PWA versus its contract claim. Evidence of such cited by Boykin includes the fact that the total amount Boykin invoiced to Laborde is $589,548.99, but Boykin is only seeking to recover $587,317.12 from LMK. Boykin asserted that the price differential reflects the fact that Boykin acknowledged that all but two of the piles associated with one of the invoices were delivered to the job site, and given that Boykin did not deliver these piles, payment for those two piles is not being sought in its PWA claim against LMK. Boykin claimed that it subtracted three "non-lienable amounts" from the total amount invoiced to Laborde including: (1) $1,823.67 for the two piles on one of the invoices that were not delivered to the project; (2) $141.70 for two of the bars associated with an invoice that were not delivered to the site; and (3) a charge of $266.50 reflected on Invoice NO. 17905-IN.

Boykin also urged that its demurrage charges are secured under the PWA on the basis that such charges were agreed to by Laborde in the Written Proposal and thus represent amounts owed to Boykin by Laborde for the cost of delivering the movables that became part of the immovable. This rationale, Boykin posited, also applies to the cancel load expenses incurred by Boykin and owed by Laborde.[4]

In defending the trial court's grant of the partial summary judgment in its favor, Boykin insists that it is not genuinely disputed that Laborde accepted the price and terms of the Written Proposal. Boykin maintains that with great precision, it meticulously segregated and detailed its PWA claim, distinguishing its contract claims against Laborde from the amounts secured under the PWA, and made a *prima facie* showing of its PWA claim. Boykin claims that it met its

---

[4] Additionally, Boykin objected to numerous exhibits offered by LMK in support of LMK's motion for summary judgment and argued that LMK failed to meet its burden of proving that Boykin entered into a compromise with LMK so as to defeat Boykin's lien enforcement action against LMK.

19

burden of proof to establish that no genuine issue of material fact remained for trial and it is entitled to judgment as a matter of law.

We disagree. Instead, we find that there are numerous genuine issues of material fact in dispute which precluded the entry of summary judgment in favor of Boykin on its PWA claim. As a supplier to the Project, Boykin's PWA lien rights are limited to the "price of movables" sold to Laborde which "become component parts of the immovable, or are consumed at the site of the immovable... ." La. R.S. 9:4802A(3). It is evident that Boykin's PWA claim is predicated on the enforceability of the terms of the Written Proposal, as Boykin is seeking to recover from LMK unpaid amounts it invoiced to Laborde pursuant to the price and the terms set forth in in the Written Proposal. However, Boykin's own evidence calls into question the enforceability of the very agreement upon which Boykin's PWA claim against LMK is based. This evidence showed that the Written Proposal was never signed by Boykin and Laborde and that Laborde refused to sign that document because it did not reflect the terms previously allegedly verbally agreed to by the parties regarding the delivery price of the 18" piles. Further, Boykin's evidence showed that Laborde did not agree with other terms of the Written Proposal, such as demurrage charges, which clearly form part of Boykin's PWA claim against LMK.

Because the price Laborde agreed to pay Boykin for furnishing and delivering the concrete piles to Laborde for use on the Project is disputed, the trial court erred in granting partial summary judgment to Boykin on its PWA claim against LMK. Clearly, as reflected by Laborde's discovery responses, there are numerous genuine issues of material fact regarding the actual amount owed to Boykin by Laborde, and thus, the amount owed by LMK to Boykin for Boykin's

work on the Project. Accordingly, the partial summary judgment entered in favor of Boykin on its PWA claim is hereby reversed.

*LMK and HANOVER'S APPEAL OF THE JUDGMENT DENYING THEIR MOTION FOR SUMMARY JUDGMENT*

The trial court certified the judgment denying LMK and Hanover's motion for summary judgment as a final appealable judgment pursuant to La. C.C.P. art. 1915B. The trial court clearly erred in so doing. The denial of a motion for summary judgment is an interlocutory judgment that is not appealable and cannot be certified as such. **Ascension School Employees Credit Union v. Provost Salter Harper & Alford, L.L.C.**, 2006-0992 (La. App. 1st Cir. 3/23/07), 960 So.2d 939, 940; **Belanger v. Gabriel Chemicals, Inc.**, 2000-0747 (La. App. 1st Cir. 5/23/01), 787 So.2d 559, 563, writ denied, 2001-2289 (La. 11/16/01), 802 So.2d 612. Therefore, this court lacks appellate jurisdiction under La. C.C.P. art. 1915B to review this ruling.

However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. **Judson v. Davis**, 2004-1699 (La. App. 1st Cir. 6/29/05), 916 So.2d 1106, 1112-13, writ denied, 2005-1998 (La. 2/10/06), 924 So.2d 167. Pursuant to this general principle, we shall consider LMK and Hanover's argument that the trial court erroneously denied their motion for summary judgment. See **Fonseca v. City Air of Louisiana, LLC**, 2015-1848 (La. App. 1st Cir. 6/3/16), 196 So.3d 82, 85 fn.3.

In their cross motion for summary judgment, LMK and Hanover argued that Boykin waived and released all of its liens and claims against LMK pursuant to the terms of a "Final Release" signed by Boykin's office manager. According to LMK and Hanover, the terms of the release must be enforced as written because the

21

language is unambiguous and because Boykin's office manager had authority to bind Boykin to that agreement. However, after a thorough review of the relied-upon document and all of the evidence submitted in connection with LMK and Hanover's motion for summary judgment, we find that there are numerous disputed factual issues which must be resolved before it can be determined that Boykin in fact waived all of the claims asserted in this litigation. The presence of these disputed factual issues preclude the entry of summary judgment in favor of LMK and Hanover, and the trial court correctly denied their motion for summary judgment.[5]

## CONCLUSION

The June 29, 2018 judgment is reversed insofar as it granted the motion for partial summary judgment in favor of Boykin Brothers, LLC on its lien enforcement claim pursuant to the Private Works Act. In all other respects, the judgment is affirmed. LMK Baton Rouge Construction, LLC's application for supervisory writs is denied as moot. The case is remanded for proceedings consistent with this opinion. All costs of this appeal are assessed equally to Boykin Brothers, LLC, LMK Baton Rouge Construction LLC, and The Hanover Insurance Company.

**REVERSED IN PART AND AFFIRMED IN PART; WRIT DENIED.**

---

[5] LMK filed an application for supervisory writs with this court, seeking supervisory review of the trial court's denial of its motion for summary judgment. **Boykin Brothers, L.L.C. v. Laborde Construction Industries, L.L.C.,** 2018CW1120. We deny the writ application as moot.